IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

STEVEN OWENS,                           :
                                        :
            Plaintiff                   :
                                        :
      v.                                :     CIVIL NO. 4:CV-13-680
                                        :
JOHN MURRAY, ET AL.,                    :     (Judge Brann)
                                        :
            Defendants                  :

# M E M O R A N D U M

February 21, 2014

## Background

Steven Owens, an inmate presently confined at the Smithfield State Correctional Institute, Huntingdon, Pennsylvania (SCI-Smithfield), filed this pro se civil rights action.  Service of the Complaint was previously ordered.

Named as Defendants re the following officials at Plaintiff's prior confinement, the State Correctional Institution, Camp Hill Pennsylvania, (SCI-Camp Hill):  ex-Superintendent John Murray; Safety Manager Scott Fair; Major John Horner; Hearing Examiner Reisinger; Unit Managers Rodney Carberry and Christopher Chambers; Lieutenants Flowers and Davy; Sergeant Cook; and Correctional Officers Briggs, Reynolds, and Gardner.

1

Plaintiff states that while housed in the SCI-Camp Hill Restricted Housing Unit (RHU) on April 9, 2011 he was placed on plexiglass shield and movement restriction for a one week period by Defendant Flowers.  See  Doc. 1, ¶ 16.  During this same period, Plaintiff was also denied showering, exercising, and shaving privileges, as well as water, bedding and cell cleaning.  A second one week period consisting of the same deprivations and restrictions listed above was allegedly ordered by Defendant Flowers on May 5, 2011.

Owens describes his RHU cell as having a broken overhead light and a plumbing problem which caused flooding whenever the water in his cell was turned on.  Moreover, Plaintiff was purportedly denied food for a one week period due to the lack of overhead lighting.  See id. at ¶ 24.  Despite being made aware of those conditions, Unit Manager Carberry and Major Horner allegedly refused to move Owens to a different cell.[1]  The Complaint also contends that ex-Superintendent Murray failed to investigate a grievance which Plaintiff filed regarding the conditions of his RHU confinement.

The Complaint next states that after Owens was transferred back to SCI-

---

[1]   Carberry allegedly told Plaintiff that he would not be moved because he was "a wise guy with my staff."  Id. at ¶ 25.

Camp Hill on September 12, 2011,[2] he was again placed in the RHU (different cell) with a plexiglass shield allegedly at the direction of Lieutenant Davy. Plaintiff claims that this unwarranted imposition of a shield allegedly aggravated his asthma and caused him to suffer shortness of breath.  Owens further describes his latest RHU cell as having rusty walls, a leaky toilet, and being insect infested. It is also asserted that Plaintiff was denied adequate medical treatment for a left ear infection which he developed due to those  poor cell conditions.[3]

On September 28, 2011, Plaintiff contends that he was served tomato soup by Flowers and Correctional Officer Garner even though he had a documented history of being allergic to tomatoes.  See id. at ¶ 46.  Later that same day, Owens states that he was physically assaulted by Defendants Cook and Garner when they responded to a report that he had suffered an allergic reaction from eating the tomato soup.[4]  Briggs and Reynolds allegedly witnessed the Plaintiff being attacked in his cell and failed to intervene on Owens' behalf.

---

[2]  During the interim, Plaintiff was housed at the State Correctional Institution, Graterford, Pennsylvania (SCI-Graterford).

[3]  Owens maintains that a gnat was found in his ear and he was provided with medication including ear drops.  However, Lieutenant Flowers purportedly discontinued the ear drops in retaliation for Plaintiff's pursuit of administrative relief.

[4]  Plaintiff additionally claims that the alleged use of excessive force also constituted assault and battery.

After the alleged unprovoked assault, Plaintiff states that he was left in handcuffs for a prolonged period of time (approximately five hours) as a punitive measure by Flowers, Cook and Garner.  As a result, he suffered temporary loss of feeling in his hands, arms, and fingers.   Finally, Plaintiff asserts that he was denied due process by Hearing Examiner Reisinger during  institutional misconduct hearing proceedings regarding three (3) disciplinary charges. Specifically, it is alleged that   Reisinger denied Plaintiff the opportunity to call witnesses.   See id. at ¶ 80.  Owens additionally contends that he was not provided with inmate version and witness forms, the charges were improperly served, and the findings of guilt were not supported by the evidence.

Defendants have responded to the Complaint by filing a motion to dismiss. See Doc. 13.  The unopposed motion is ripe for consideration.[5]

**Discussion**

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling

---

[5]    Since the motion to dismiss does not address Plaintiff's claims of being subjected to excessive force and thereafter placed in handcuffs for an excessive period of time, those claims (Doc. 1, ¶¶ 56 - 79) will be allowed to proceed and Defendants' pending motion will be construed as seeking partial dismissal.

on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ____ , 129 S.Ct 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 129 S.Ct. at 1949.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 1950.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.  The reviewing court must

determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

## Official Capacities

Defendants initially contend that the claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment. See Doc. 19, p. 15.

The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages. Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003). Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency. Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005). As such, Owens' claims for money damage  brought against the

6

individual Defendants in their official capacities are considered to be against the state itself and are barred by the Eleventh Amendment.[6]

## Personal Involvement

Defendants' second argument contends that ex-Superintendent Murray, Major Horner, and Safety Manager Fair are entitled to entry of dismissal on the basis of lack of personal involvement.  <u>See</u> Doc. 19, p. 16.  It is asserted that the Complaint does not raise any contention that any of those three officials were personally involved in any civil rights violations and that they are being named as Defendants solely on the basis of their supervisory positions or their respective alleged failures to respond to Plaintiff's requests and grievances.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>See</u> <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

---

[6]    To the extent that Plaintiff is seeking injunctive relief against the individual defendants in their official capacities, such requests are not barred by the Eleventh Amendment.  <u>See</u> <u>Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess</u>, 297 F.3d 310, 323 (3d Cir. 2002).   However, any such requests would appear to be moot since Owens is no longer confined at SCI-Camp Hill.

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not enjoy a constitutional right to a prison grievance system.  See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner").  Consequently, any attempt by a prisoner plaintiff to establish liability against any correctional official solely based upon the substance or lack of

response to his institutional grievances does not by itself support a constitutional due process claim.  See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

With respect Safety Manager Fair, Defendants note that the Complaint alleges only that Fair was responsible for responding to safety issues within the prison and that a work order which was submitted to address Plaintiff's complaints regarding the  plumbing and lighting in his RHU cell was not acted upon.   They conclude that such sparse allegations are insufficient to show personal involvement by Fair in any alleged constitutional violations.   See Doc. 19, p. 17.

Based upon this Court's review of the Complaint, the undersigned agrees that Safety Manager Fair is described as being responsible for responding to "safety issues" within the SCI-Camp Hill RHU.  Doc. 1, ¶ 15.  It is also alleged that Fair was deliberately indifferent to the conditions in Plaintiff's RHU cell in that the Defendant "refused to respond to the maintenance work orders that were placed into the prison's computer to have the Plaintiff's overhead light and to have

the cracked pipe fixed." See id. at p. 15.  Owens adds that due to the purported

failure to repair the broken light, he was not fed for a week.  See id.  Given the

latitude afforded to pro se filings, the Complaint has alleged that Fair was made

aware of purportedly unsafe conditions existing within Plaintiff's RHU cell and

failed to address those problems despite being authorized to do so .  An application

of the  Rode requirements to those allegations shows that the Complaint has

adequately alleged  personal involvement by Fair in conduct which could arguably

rise to the level of a constitutional violation.  Defendant Fair's request for

dismissal will be denied.

   With respect to ex-Superintendent Murray and Major Horner, it is asserted

that their alleged failure to train, supervise, or discipline their subordinates is an

inadequate basis for establishing civil rights liability under § 1983.  Defendants

conclude that such contentions are insufficient for establishing personal

involvement.

    Plaintiff clearly describes Murray as being the person responsible for the

operation of SCI-Camp Hill and the welfare of the prisoners confined at that facility

during the relevant time period of this action.  See Doc. 1, ¶ 4.   It is specifically

alleged that Owens spoke to Murray on May 5, 2011 regarding the alleged

inadequate conditions of his RHU confinement including deprivation of meals.  See

id. at ¶ 20.  Despite directing Owens to put his complaints in writing and assuring

the prisoner that he would personally conduct an investigation, Plaintiff claims that

Murray just forwarded the issue onto Deputy Superintendent Southers (a non-

defendant), who then referred the matter to Major Horner.

Since the only discernible claim asserted that the Superintendent delegated

the investigation into Plaintiff's RHU related grievance to a subordinate, this Court

is not satisfied that the personal involvement requirement of Rode has been met.

Under the criteria set forth in Alexander and Pryor-El, since the claim against

Murray is premised solely upon the Superintendent's handling of Owens'

institutional grievance, ex-Superintendent Murray is entitled to entry of dismissal

on the basis of lack of personal involvement.[7]

Major Horner is described as having supervision over the prison's housing

units.  Plaintiff asserts that his complaints regarding the conditions of his RHU

confinement were referred to Horner by Deputy Superintendent Southers.  See id. at

¶ 22. Defendant Horner's subsequent response is described as concluding that

although Plaintiff had missed three meals, said deprivations were the result of his

failure to follow established  prison procedure and not the result of any improper

---

[7]    Moreover, Plaintiff admits that an investigation was conducted and that a work order was issued, thus, undermining any claim that his grievance was ignored.

staff conduct.  Horner also allegedly acknowledged that the overhead light in Owens' RHU cell was broken and that the cell also had a plumbing problem. Plaintiff asserts that despite acknowledging those significant deficiencies in his cell, Horner failed to move him to another cell and, thus, acted with deliberate indifference.

Based upon an application of <u>Rode</u> to those claims, as well as other contentions raised against that Defendant, it is the determination of this Court that the personal involvement requirement has been sufficiently satisfied with respect to Major Horner at this juncture in the proceedings.

**<u>Disciplinary Proceedings</u>**

Plaintiff asserts that Hearing Examiner Reisinger presided over his institutional proceedings regarding three (3) misconduct charges and violated his due process rights by denying him the opportunity to call witnesses. [8]  <u>See</u> Doc. 1, ¶ 80.  It is also alleged that Owens was not provided with inmate version and witness forms, the charges were improperly served, and the findings of guilt were not supported by the evidence.

Defendants assert that a viable due process claim has not been stated against

---

[8]   Reisinger sanctioned Plaintiff to serve a ninety (90) day term of disciplinary custody with respect to each of the three misconduct charges, a total of two hundred and seventy (270) days.

Hearing Examiner Reisinger because the resulting disciplinary sanction did not impose an atypical and significant hardship.  See Doc. 19, p. 19.

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  The Supreme Court has mandated a two-part analysis of a procedural due process claim:  first, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property[,]'" and second, "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'"  Ingraham v. Wright, 430 U.S. 651, 672 (1977).  If there is no protected liberty or property interest, it is unnecessary for the Court to analyze what procedures were followed when an alleged deprivation of an interest occurred.

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law.  Meachum v. Fano, 427 U.S. 215, 223-26 (1976).  In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed.  Wolff, 418 U.S. at 563-71.  The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making

13

body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In Hill, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.  The Third Circuit Court of Appeals, and other courts applied the Wolff principles to prison disciplinary hearings which did not result in withdrawal of good time credit but instead in disciplinary or administrative segregation.  E.g., Grillo v. Coughlin, 31 F.3d 53 (2d Cir. 1994); Griffin v. Spratt, 969 F.2d 16 (3d Cir. 1992); Cook v. Lehman, 863 F. Supp. 207 (E.D. Pa. 1994).

However, the United States Supreme Court's subsequent decision in Sandin v. Conner, 515 U.S. 472 (1995), marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner.  Id. at 481.  In Sandin, the Supreme

Court reasoned, <u>inter alia</u>, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. <u>Id</u>. at 485.  The nature of an inmate's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. <u>Id</u>. at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Supreme Court held that the procedural protections in <u>Wolff</u> were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." <u>Id</u>.   The <u>Sandin</u> Court  relied on three factors in making this determination: (1)confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Plaintiff asserts that after he was found guilty of three (3) institutional misconducts, Hearing Examiner Reisinger sanctioned him to an aggregate 270 day term of disciplinary custody.  <u>See</u> Doc. 19, p. 19.  Courts within this circuit,

applying <u>Sandin</u> in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement.  See <u>Torres v. Fauver</u>, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest in avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical); <u>Smith v. Mensinger</u>, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest); <u>Diaz v. Canino</u>, 2012 WL 5352483 *3 (3d Cir. Oct. 31, 2012)(a 360 day term of disciplinary confinement did not implicate a protected liberty interest).

Pursuant to the above decisions, this Court agrees that Plaintiff's claims against Hearing Examiner Reisinger cannot proceed because the resulting disciplinary sanctions did not impose an atypical and significant hardship as contemplated under <u>Sandin</u>.  Dismissal will be granted in favor of Defendant Reisinger.


**<u>Conditions of Confinement</u>**

As previously noted, Plaintiff contends that he underwent two periods of RHU confinement, from April 9, 2011 to the date of his transfer to SCI-Graterford, and a subsequent period following his September 12, 2011 return to SCI-Camp Hill.  Owens claims that he was subjected to unconstitutional conditions during both RHU stays.

Defendants argue that the conditions of confinement claims with respect to Owens' RHU stays do not set forth a claim under the Eighth Amendment because there are no facts alleged indicating that they were deliberately indifferent to a serious risk of harm.  See Doc. 19, p. 20.  In order to state a viable Eighth Amendment claim, an inmate Plaintiff must allege that a condition of confinement is so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs ... [that] deprive

inmates of the minimal civilized measure of life's necessities." <u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410 (3d Cir. 2000).

An Eighth Amendment claim against a prison official must meet two requirements:  (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."[9] <u>Farmer</u>, 511 U.S. at 834 (1994).  In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." <u>Id</u>.  In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment.

With respect to Plaintiff's first RHU stay, the Complaint alleges that beginning on April 9, 2011 Owens was denied showering, exercise, shaving, water, bedding,  and cell cleaning for a one week period.  <u>See</u> Doc. 1, ¶ 16.  During this time frame, Plaintiff also alleges that a plexiglass shield was placed on his cell door

---

[9]    Under <u>Farmer</u>, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety.  <u>Beers-Capitol v. Whetzel</u>, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer</u>, 511 U.S. at 837.

and he was on movement restriction.  A second such period of the same deprivations commenced on May 5, 2011.  See id. at ¶ 17.  Plaintiff further states that he was also required to wear a spit mask.

Owens also claims that the overhead light in his RHU cell was broken[10] and he was denied meals for one week.  See id. at ¶ 20.  Moreover, Owens alleges that there was a broken water pipe which leaked whenever the water  was turned on. See id. at ¶ 24.

Denial of showers for a temporary period of time is not a constitutional violation.  See Briggs v. Heidlebaugh, 1997 WL 318081 *3 (E.D. Pa. 1997)(denial of showers for two (2) weeks); DiFilippo v. Vaughn, 1996 WL 355336 at *5 (E.D. Pa. 1996)(cold showers for one month); Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992)(deprivation of showers and recreation during a brief period of placement in administrative detention found not to be Eighth Amendment violation).

A temporary denial of exercise with no medical effect is also not a substantial deprivation under the Eighth Amendment.  Gattis v. Phelps, 344 Fed. Appx. 801, 805, (3d Cir. 2009).  It has been similarly recognized that the denial of recreation

---

[10]   At one point, the Complaint contends that Plaintiff was without overhead lighting for over three (3) months.  See id. at ¶ 24

for a thirteen (13) day period does not amount to cruel and unusual punishment. Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989).  Likewise, the halting of recreation during emergency lock downs is "not objectively serious enough to warrant constitutional protection."  Bacon v. Minner, 2007 WL 1157138 *2 (3d Cir. April 19, 2007).

Based upon an application of the above standards, the alleged denial of recreation and showering privileges to Plaintiff for a two week period by itself was not of such magnitude or duration as to rise to the level of an Eighth Amendment violation.  However, as discussed above when reviewing conditions of confinement claims the totality of the circumstances must be considered.

Deprivation of a single meal does not rise to the level of an Eighth Amendment violation.  See Robles v. Coughlin, 725 F.2d 12, 15 (2nd Cir. 1983)(only a  substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim); Warren v. Irvin, 985 F. Supp. 350 (W.D. N.Y. 1997); Williams v. Berge, 2002 WL 32350026 *2 (W.D. Wis. 2002); Moss v. Ward, 450 F. Supp. 591, 596 (W.D. N.Y. 1978)(deprivation of one meal may not be cruel and unusual punishment).  However, Plaintiff's claims of being denied meals for a one week period is sufficient to set forth a viable constitutional claim.

Based upon an application of the above described standards to the totality of

Plaintiff's claims of being intentionally housed in an RHU cell prior to his transfer to SCI-Graterford which allegedly had a broken water pipe and caused cell flooding when the water was turned on;  lacked overhead lighting for three months; where Owens was denied meals for two separate one week periods; and suffered deprivations of bedding, cleaning supplies, showering, as well as recreation, adequately set forth conditions of confinement claim sufficient to withstand scrutiny under Rule 12(b)(6).  Although some of the alleged deprivations were not of constitutional magnitude, the combined alleged conditions were sufficiently serious to set forth a viable constitutional claim.

This determination is bolstered by Plaintiff's contention that despite recognizing that inadequate conditions existed which warranted the issuance of a work order, Owens was not moved to another cell because a prison staff member felt that he was a "wise guy."   Accordingly, the request for dismissal of the claims pertaining to Owen's first RHU placement (April-May, 2011)  will also be denied.

The pro se Plaintiff's claims pertaining to the conditions of his RHU placement after his return from SCI-Graterford (September, 2011) are similarly sufficient.  Specifically, the aggregate allegations that the imposition of a plexiglass shield over his cell door by Lieutenant Davy aggravated Owens' asthmatic condition to the extent that he suffered shortness of breath; the claim that he

developed an ear infection due to insect infestation in his cell; and the assertions that his cell had rusty walls and a leaky toilet (which caused waste material to form on the cell floor, when considered in the aggregate and coupled with the assertion that Defendants were aware of those conditions and refused to take corrective measures as a punitive measure, adequately assert sufficiently serious conditions of confinement as contemplated under <u>Farmer</u>.  The requests for dismissal of the conditions of confinement claims also will be denied.

## Equal Protection

According to the Complaint, Defendant Unit Manager Carberry was in charge of the SCI-Camp Hill RHU.   Owens asserts that Carberry refused to move him to a different cell and told him that he would have to deal with not being fed because he was a "wise guy with my staff."  Doc. 1, ¶ 25.  Plaintiff also raises a vague claim that Carberry racially discriminated against him.   <u>See</u> <u>id</u>. at p. 14.

The motion to dismiss contends that since Owens does not allege that he subjected to disparate treatment there is no cognizable claim that his right to equal protection was violated.  <u>See</u>  Doc. 19, p. 25.

A litigant seeking to establish a viable equal protection claim must show an

intentional or purposeful discrimination.[11] <u>Wilson v. Schillinger</u>, 761 F.2d 921, 929 (3d Cir. 1985), <u>cert. denied</u>, 475 U.S. 1096 (1986).  However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways."  <u>Reed v. Reed</u>, 404 U.S. 71, 75 (1971).  The United States Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'"  <u>Artway v. Attorney Gen.</u>, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985)); <u>see also</u> <u>Kuhar v. Greensburg-Salem Sch. Dist.</u>, 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

In analyzing an equal protection claim, a court must consider what interest or type of classification is involved.  Plaintiff's present claims do not involve a classification based on race, religion or national origin.  Accordingly, Plaintiff's equal protection claims do not call for heightened scrutiny.  "Because the distinctions at issue here do not implicate a suspect or quasi-suspect class, the state

---

[11] The Fourteenth Amendment of the Constitution provides in pertinent part: "No State shall . . . deny any person within its jurisdiction the equal protection of the laws."

action here is presumed to be valid and will be upheld if it is 'rationally related to a legitimate state interest.'" <u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410, 423 (3d Cir. 2000.)

Based upon a review of the Complaint, there is no discernible claim that any Defendant, including Unit Manager Carberry, engaged in intentional or purposeful discrimination or that they treated Owens differently from similarly situated individuals on the basis of his race or some other impermissible reason.  The Complaint also contains no factual averments which could support a claim that the Defendants intentionally created any discriminatory policies or programs.  At best, Plaintiff contends that Carberry mistreated him not because of his race, but rather, because the Defendant felt that Owens had not conducted himself properly when interacting with prison staff.  Under the standards articulated in <u>Wilson</u> and <u>Artway</u>, dismissal of Owens' wholly unsupported equal protection claim is appropriate.

## Retaliation

Plaintiff alleges that Unit Manager Carberry refused to move him to a new RHU cell because Owens was being a "wise guy" with prison staff.   <u>See</u> Doc. 1, ¶ 25.  Defendants contend that this claim does not rise to the level of an  actionable claim because there is no contention that Carberry's alleged action was in response

to any constitutionally protected conduct by Plaintiff.[12]

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir.  2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[13]  See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d

---

[12]    The Complaint includes other assertions of retaliation which are not addressed by the motion to dismiss and therefore will proceed.  For instance, Plaintiff contends that Lieutenant Flowers confiscated Plaintiff's prescribed ear drops in retaliation for Owens' initiation of a grievance.  See Doc. 1, ¶ 45.

[13]    Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of

Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to the

Defendants to prove by a preponderance of the evidence that they "would have

made the same decision absent the protected conduct for reasons reasonably related

to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir.

2002)(internal quotation and citation omitted).  When analyzing a retaliation claim,

it must be recognized that the task of prison administrators and staff is difficult, and

the decisions of prison officials require deference, particularly where prison security

is concerned.  Rauser, 241 F.3d at 334.

Filing of a lawsuit is protected activity under the First Amendment right of

prisoners to petition the court.  Anderson v. Davila, 125 F.3d 148, 161 (3d Cir.

1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981).  The submission

of grievances is also constitutionally protected conduct.  See Mitchell v. Horn, 318

F.3d 523, 530 (3d Cir. 2003).

Defendants assert that being a "wise guy" is not constitutionally protected

conduct.   See Doc. 19, p. 25.  With respect to the retaliation claim against

Carberry, this Court concurs that the Rauser requirement that Plaintiff show that his

constitutionally protected activity was a motivating factor for the adverse action

---

causation.  Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

was not satisfied.  Dismissal will be granted with respect to the retaliation claim against Carberry; the remaining unaddressed assertions of retaliation will proceed.

## Pendent State Law Claims

Defendants also seek dismissal of Owens' state law claims for assault and battery on the basis that they are barred by the doctrine of sovereign immunity.  See Doc. 19, p. 20.

Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.  See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  28 U.S.C. § 1367(c)(3) (1997) provides that a district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction.  Once the basis for federal jurisdiction disappears, a district court should only exercise its discretion to entertain pendent claims if extraordinary circumstances exist.  New Jersey Department of Environmental Protection v. Glouchester Environmental Management, 719 F. Supp. 325, 337 (D. N.J.  1989).

A decision as to whether this Court should exercise jurisdiction over any state law tort claims against the Defendants will be held in abeyance pending resolution of all dispositive motions.

**Conclusion**

Defendants' motion to dismiss will be construed as seeking partial dismissal and the unopposed motion will be granted in part. The monetary damage claims brought against the individual Defendants in their official capacities will be dismissed since these claims are barred by the Eleventh Amendment.

Superintendent Murray's request for entry of dismissal on the basis of lack of personal involvement is granted. However, the personal involvement requirement has been sufficiently satisfied with respect to the claims against Major Horner and Safety Manager Fair at this juncture in the proceedings. The request for dismissal of Plaintiff's claims against Hearing Examiner Reisinger is granted because those allegations cannot proceed because the resulting disciplinary sanctions did not impose an atypical and significant hardship. Dismissal will also be granted with respect to the retaliation claim against Unit Manager Carberry as well as the allegations of conspiracy. The remaining contentions of retaliation, as well as Owens' claims of unconstitutional conditions of confinement and excessive force will proceed.

Finally, a decision as to whether this Court should exercise jurisdiction over any state law tort claims against the Defendants will be held in abeyance pending

28

resolution of all dispositive motions.

An appropriate Order follows.

BY THE COURT:

<u>s/Matthew W. Brann</u>
Matthew W. Brann
United States District Judge