**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

STEVEN OWENS,                          :
                                       :
            Plaintiff,                 :
                                       :
     v.                                :     No.: 4:13-CV-680
                                       :
JOHN MURRAY, ET AL.,                   :     (Judge Brann)
                                       :
            Defendants.                :

**MEMORANDUM OPINION**

**SEPTEMBER 15, 2017**

## I.    BACKGROUND

Steven Owens, an inmate presently confined at the Mahanoy State

Correctional Institute, Frackville, Pennsylvania (SCI-Mahanoy), filed this *pro se*

civil rights action.  By Memorandum and Order dated February 21, 2014,

Defendants' unopposed motion to dismiss was construed as seeking partial

dismissal and partially granted.[1]  *See* Doc. 22.

Remaining Defendants are the following officials at Plaintiff's prior

confinement, the State Correctional Institution, Camp Hill Pennsylvania, (SCI-

Camp Hill):  Safety Manager Scott Fair; Major John Horner; Unit Managers

---

[1] Dismissal was granted in favor of Defendants Superintendent Murray and Hearing Examiner
Reisinger as well as with respect to Murray's conspiracy claim and the retaliation allegation
asserted against Unit Manager Carberry.

Rodney Carberry and Christopher Chambers; Lieutenants Flowers and Davy; Sergeant Cook; and Correctional Officers Briggs, Reynolds, and Gardner.

It is undisputed that Plaintiff had two separate periods of confinement at SCI-Camp Hill from April 4, 2011-June 1, 2011 and from September 13, 2011 through October 11, 2011, respectively. According to the surviving portion of the Complaint, Owens was assigned to the SCI-Camp Hill Restricted Housing Unit (RHU) during his initial confinement because of misconduct at his prior place of confinement. Plaintiff's RHU cell is described as having a broken overhead light and a plumbing problem which caused flooding whenever the water in his cell was turned on. Despite being made aware of those conditions, Unit Manager Carberry and Major Horner allegedly refused to move Owens to a different cell.

While housed in the RHU on April 9, 2011, Owens alleges that he was placed on plexiglass shield and movement restriction for approximately one (1) week by Defendant Flowers. *See* Doc. 1, ¶ 16. During that period, Owens contends that he was refused showering, exercising, and shaving privileges, as well as water, bedding and cell cleaning. A second week long period consisting of the same deprivations and restrictions listed above was allegedly ordered by Lieutenant Flowers on May 5, 2011. Moreover, Owens was also purportedly denied food for several days due to the lack of overhead lighting in his cell. *See id.* at ¶ 24.

Owens next states that he returned to SCI-Camp Hill from the State Correctional Institution, Graterford, Pennsylvania (SCI-Graterford) on September 12, 2011 and was placed in a different RHU cell with a plexiglass shield allegedly at the direction of Lieutenant Davy. Plaintiff asserts that the imposition of a shield was improper, aggravated his asthma, and caused him to suffer shortness of breath. His RHU cell is described as having rusty walls, a leaky toilet, and being insect infested. During this period, Owens was purportedly denied adequate medical treatment for a left ear infection.[2]

Plaintiff was allegedly served tomato soup by Flowers and Correctional Officer Garner on September 28, 2011, even though he had a documented history of being allergic to tomatoes. *See id.* at ¶ 46. Owens next asserts that he was physically assaulted in his cell by Defendants Cook and Garner that same day when they responded to a report that he had suffered an allergic reaction from eating the tomato soup. This alleged use of excessive force is also described as constituting assault and battery. In addition, Defendants Briggs and Reynolds purportedly witnessed the attack and failed to intervene.

---

[2] It is asserted that Lieutenant Flowers discontinued prescribed ear drops in retaliation for Plaintiff's pursuit of administrative relief.

Following this incident, Plaintiff states that he was left in handcuffs for approximately five (5) hours as a punitive measure by Flowers, Cook and Garner. This application of restraints allegedly caused Owens to suffer temporary loss of feeling in his hands, arms, and fingers.

Presently pending is the Remaining Defendants's motion for summary judgment. *See* Doc. 69. By Order dated April 27, 2017, Owens was granted thirty (30) days in which to submit either a motion to compel discovery or file a response to the summary judgment motion. *See* Doc. 82. He was thereafter granted an extension of time in which to comply with the April 27, 2017 Order. *See* Doc. 84. Despite being granted an ample opportunity to do so, Owens has not filed a response. Accordingly, the summary judgment motion will be deemed unopposed.

## II.    DISCUSSION

Remaining Defendants claim entitlement to entry of summary judgment on the grounds that: (1) the official capacity claims against them are moot; (2) there are no assertions of personal involvement in constitutional misconduct raised against Defendants Fair and Horner; (3) Plaintiff's surviving claims were not administratively exhausted; (4) the conditions of Plaintiff's confinement were constitutionally adequate; (5) a viable retaliation claim has not been stated; (6) Owens was not subjected to unwarranted use of excessive force; and (7) the state

law claims are barred by sovereign immunity.  *See* Doc. 73, p. 2.

**A.      Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *See also Saldana v. Kmart Corp.,* 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id*. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.,* 142 F.R.D. 607, 609 (M.D. Pa. 1992).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its]

own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex,* 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### B. Official Capacities

This Court's February 21, 2014 Memorandum and Order previously ruled that Owens' claims for monetary damages brought against the individual Defendants in their official capacities were barred by the Eleventh Amendment. It was also noted that any claims for injunctive relief against the individual Defendants in their official capacities appeared to be moot since Owens was no longer confined at SCI-Camp Hill. Remaining Defendants initial summary judgment argument asserts that the surviving official capacity claims are subject to dismissal on the basis of mootness. *See* Doc. 73, p. 25.

Federal courts can only resolve actual cases or controversies, U.S. Const., Art. III, § 2, and this limitation subsists "through all stages of federal judicial proceedings. . . ." *Id. see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (the adjudicatory power of a federal court depends upon "the *continuing* existence of a live and acute controversy)" (emphasis in original). "An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy . . . if unaccompanied by continuing, present adverse effects." *Rosenberg v. Meese*, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985); *see also Gaeta v. Gerlinski*, Civil No. 3:CV-02-465, slip op. at p. 2 (M.D. Pa. May 17, 2002) (Vanaskie, C.J.).

Furthermore, an inmate's claim for injunctive and declaratory relief fails to present a case or controversy once the inmate has been transferred. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); *see also Carter v. Thompson*, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992). Since Owens was transferred from SCI-Camp Hill on September 13, 2011 and there is no indication that he will be returned to that facility in the foreseeable future, this Court agrees that any claims by the Plaintiff for injunctive or declaratory relief are now moot.

Consequently, since Plaintiff's official capacities claims for monetary damages were previously dismissed, the Remaining Defendants are entitled to

entry of summary judgment with respect to all claims against them in their official capacities.

## C.    Defendants Fair and Horner

Remaining Defendants' second argument contends that  Major Horner and Safety Manager Fair are entitled to entry of summary judgment on the basis of lack of personal involvement.  *See* Doc. 73, p. 28.  It is asserted that the Complaint does not raise any contention that either of those officials were personally involved in any civil rights violations and that they are being named as Defendants solely on the basis of their supervisory positions or their respective alleged failures to respond to Plaintiff's requests and grievances.

It is initially noted that a similar argument was previously advanced in Defendants' motion to dismiss and was denied.  Specifically, the February 21, 2014 Memorandum and Order concluded that given the latitude afforded to *pro se* filings, the allegation that Fair was made aware of purportedly unsafe conditions existing within Owens' RHU cell and failed to address those problems despite being authorized to do so sufficiently satisfied the personal involvement requirement at that juncture in the proceedings.  *See* Doc. 21, p. 10.  It was similarly determined that the allegations that Horner was aware that the overhead light in  Owens' RHU cell was broken and that the cell had a plumbing problem and failed to move Owens to another cell adequately asserted personal involvement

sufficient to withstand scrutiny on a motion to dismiss.

As previously discussed by this Court, in order to state an actionable civil rights claim, a plaintiff must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Federal civil rights claims brought under § 1983 cannot be premised on a theory of *respondeat superior.  Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976).  As explained in *Rode*:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs. . . .  [P]ersonal involvement
> can be shown through allegations of personal direction or of
> actual knowledge and acquiescence.  Allegations of
> participation or actual knowledge and acquiescence, however,
> must be made with appropriate particularity.

*Rode,* 845 F.2d at 1207.

Safety Manager Fair is described as being responsible for responding to

"safety issues" within the SCI-Camp Hill RHU. Doc. 1, ¶ 15. The Complaint alleges that Fair was deliberately indifferent to the conditions in Plaintiff's RHU cell in that the Defendant "refused to respond to the maintenance work orders that were placed into the prison's computer to have the Plaintiff's overhead light and to have the cracked pipe fixed." *See id.* at p. 15. Curiously, Owens adds that due to the purported failure to repair the broken light, he was not fed for a week. *See id.*

Remaining Defendants contend that since the undisputed record shows that Fair was not responsible for supervising or completing institutional work orders, there is no basis for a finding of personal involvement. *See* Doc. 73, p. 30. In support of the pending unopposed summary judgment argument, Remaining Defendants have submitted a declaration under penalty of perjury by SCI-Camp Hill Deputy Superintendent for Facility Management James Meintel. *See* Doc. 75-2. Meintel states that in Defendant Fair's capacity as safety Manager, he was responsible for the oversight of the prison's occupational safety and health program. *See id.* at ¶ 5. According to Meintel, the Safety Manager neither supervises nor is directly responsible for maintenance issues within the prison. Moreover, it was the prison's maintenance managers who were responsible for the handling of work orders and the repair of cell related problems such as electrical, plumbing, and heating issues. Meintel adds that the prison contracts with a pest

control company which provides a monthly service to address bug and insect problems.

Accompanying Meintel's declaration are copies of Fair's job description and records showing that there were pest and control measures provided during the relevant time period. As previously noted, Plaintiff has not disputed Meintel's declaration nor otherwise opposed the non-personal involvement argument. Based upon the undisputed record, this Court agrees that since Fair was not personally involved in the prison's maintenance department or in the completion of work orders there is no basis for a determination that this Defendant was personally involved in any constitutional misconduct. Safety Manager Fair's unopposed request for summary judgment will be granted.

Plaintiff contends that Major Horner had supervision over the prison's housing units. Owens asserts that his complaints regarding the conditions of his RHU confinement were referred to Horner by Deputy Superintendent Southers. *See id.* at ¶ 22. Defendant Horner's subsequent response is described as concluding that although Plaintiff had missed three meals, these deprivations were the result of his failure to follow established prison procedure and not the result of any improper staff conduct. Horner also allegedly had knowledge that the overhead light in Owens' RHU cell was broken and that the cell had a plumbing

problem. Plaintiff asserts that despite acknowledging those significant deficiencies in his cell, Horner failed to move him to another cell and thus acted with deliberate indifference.

In support of the pending summary judgment argument, Major Horner has submitted a supporting declaration. *See* Doc. 75, p. 1. The declaration notes that upon Plaintiff's arrival at SCI-Camp Hill he was immediately placed in the RHU because of misconducts received at his prior place of confinement. Horner avers that during the relevant time period he supervised Plaintiff's housing unit and was a member of a Program Review Committee (PRC) that reviewed Owen's RHU placement. Horner elaborates that during an April 6, 2011 PRC meeting, the Plaintiff indicated that he had no requests or concerns. *See id.* at ¶ 12. With respect to a May 4, 2011 PRC review Plaintiff again stated "that he no requests or concerns." *Id.* at ¶ 14.

On May 9, 2011, Owens submitted a grievance to Superintendent Murray complaining denial of food for several days, inadequate lighting, a leaky toilet, and other issues. Horner acknowledges that he was subsequently assigned to conduct an investigation into those claims.

As part of his investigation, Horner confirmed that none of the the inmate's complaints had been previously raised with any prison official. Horner adds that he also inspected Plaintiff's cell and was informed by housing staff that repair was requested of the plumbing and lighting problems. During the Plaintiff's second stay at SCI-Camp Hill, Horner again was part of a PRC which conducted a September 21, 2011 review. Once again, the Plaintiff failed to express any concerns or complaints. Thereafter, Horner was assigned to investigate a grievance by Plaintiff regarding the condition of his cell. However, by that juncture Plaintiff had already been moved to another cell.

As previously discussed in this Court's February 21, 2014 Memorandum and Order, inmates also do not enjoy a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 137-138 (1977); *Speight v. Sims*, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner"). Consequently, any attempt by a prisoner plaintiff to establish liability against any correctional official solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim.

It is apparent that the claims against Horner are based upon either the Defendant's participation on PRC committees or upon his review and investigation of institutional grievances. Since the undisputed record shows that Major Horner undertook appropriate remedial measures with respect to any verified housing problems experienced by the Plaintiff while at SCI-Camp Hill, this Court agrees that the personal involvement requirement has not been satisfied. Major Horner's unopposed request for summary judgment will also be granted.

### D.    Administrative Exhaustion

Remaining Defendants acknowledge that Plaintiff initiated eight (8) grievances regarding his two periods of SCI-Camp Hill confinement between April 4, 2011 and October 11, 2011. *See* Doc. 73, p. 16. However, they argue that since none of those grievances were properly appealed to final administrative review, entry of summary judgment on the basis of non-exhaustion is appropriate.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under that provision, administrative exhaustion is required in "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*,

532 U.S. 731, 741 n. 6 (2001).  Claims for monetary relief are not excused from the exhaustion requirement.  *Nyhuis v. Reno*, 204 F.3d 65, 74 (3d Cir. 2000).  Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action.  *Ahmed v. Sromovski*, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to filing suit, not while the suit is pending."  *Tribe v. Harvey*, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)); *Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007);  *see also Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies).  Rather, pursuant to the standards announced in *Williams v. Runyon*, 130 F.3d  568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[3]  The United States Supreme Court in *Jones* noted that the primary purpose of the exhaustion requirement is to allow prison officials to address complaints before being subjected to suit, reducing litigation to the extent

---

[3] In *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.

The administrative exhaustion mandate also implies a procedural default component. *Spruill v. Gillis,* 372 F.3d 218, 222 (3d Cir. 2004). As explained by the United States Court of Appeals for the Third Circuit, a procedural default rule "prevents an end-run around the exhaustion requirement." *Id*. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." *Id*. Similarly, the United States Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. *Woodford v. Ngo*, 548 U.S. 81 (2006).

Furthermore, the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement. *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (citing *Nyhuis*, 204 F.3d at 75). A subsequent Third Circuit decision reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. *Hill v. Smith*, 186 Fed. Appx. 271, 274 (3d Cir. 2006). "[S]ensitive subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust" have

also been rejected.  *Pena-Ruiz v. Solorzano*, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections  ("DOC").[4]  A copy of the policy has been submitted in support of Remaining Defendants' non-exhaustion argument. Section III of DC-ADM 804 (effective December 1, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement."  *See* Doc. 76-1, p. 6.  It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal.  Section I ("Grievances & Initial Review") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances. A rejected grievance may be resubmitted within five (5) working days of the rejection notice date.

An appeal from the Grievance Coordinator's Initial Review decision may be

---

[4] While the DOC's grievance system has been periodically amended, the three tiered appeal system was in effect throughout the relevant period of Plaintiff's SCI-Mahanoy confinement.

made in writing within fifteen (15) working days to the Facility Manager or Superintendent.  A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court.  However, an improperly submitted grievance will not be reviewed.

In support of their non-exhaustion  argument, Remaining Defendants have submitted a declaration under penalty of perjury by Grievance Review Officer Keri Moore of the Pennsylvania Department of Corrections (DOC).   *See* Doc. 76-1. Moore asserts that her job duties include maintaining records of inmate final review appeals filed with SOIGA.  She explains that those appeals are recorded in the DOC's Automated Inmate Grievance Tracking System and the system indicates whether a particular grievance has been fully exhausted.

Moore states that based upon her review of the tracking system records, Owens filed eight (8) grievances regarding aspects of his April 4, 2011-October 11, 2011 confinements at SCI-Camp Hill; this argument is unopposed.  Owens filed correspondence with SOIGA regarding three of those grievances.   In response to his correspondence, the Plaintiff was directed by SOIGA to submit

paperwork which was required for the initation of a proper appeal. *See id.* at p. 57.

As a result of Owens' failure to provide the requested and necessary paperwork,

his appeal was deemed incomplete and duly rejected.

Also submitted is a declaration by SCI-Camp Hill Grievance Coordinator

Deborah Alvord. *See* Doc. 76-2. Alvord similarly states that Plaintiff failed to

properly administratively appeal any of his eight grievances to SOIGA.

Accompanying Alvord's declaration are copies of the Plaintiff's relevant

grievances and related documents.

The undisputed record therefore establishes that the DOC had an established

grievance procedure in place during the relevant time period. Second, Owens

failed to file a proper SOIGA final administrative appeal relating to any of his

surviving claims against the Remaining Defendants. The Remaining  Defendants'

undisputed evidence satisfies their burden of establishing that Plaintiff did not

properly exhaust this available DOC administrative remedy prior to initiating this

action. Specifically, none of his relevant grievances were accepted for final

administrative review by SOIGA.

Based upon those factors, as well as  Plaintiff's failure to provide a viable

reason to excuse his failure to exhaust or to even respond to this argument, a

finding of non-exhaustion and entry of summary judgment in favor of the

Defendants under the well-settled *Spruill* and *Woodford* standards is appropriate.[5]

**Pendent State Law Claims**

Remaining Defendants also seek dismissal of Owens' state law claims for assault and battery on the basis that they are barred by the doctrine of sovereign immunity.

Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Title 28 U.S.C. § 1367(c)(3) (1997) provides that a district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction. Once the basis for federal jurisdiction disappears, a district court should only exercise its discretion to entertain pendent claims if extraordinary circumstances exist. *New Jersey Department of Enviromental Protection v. Glouchester Enviromental Management*, 719 F. Supp. 325, 337 (D. N.J. 1989). Those extraordinary circumstances do no exist here. Since this Court has determined that entry of summary judgment is appropriate with respect to Plaintiff's federal claims, jurisdiction will be declined with respect o Owens'

---

[5] Since it has been determined that Plaintiff did not exhaut his available administrative remedies with respect to any of his pending claims, it is not necessary to address the Remaining Defendants' additional arguments for summary judgment.

pendent state law claims.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge